## LEIGH vs. HORSUM.

Where one borrowed money, for which he engaged to give a note signed by him-
self and his father, and in the interim gave his own note, for which the joint
note was to be substituted ; and the joint note was accordingly signed, but was
never delivered to the lender, the son being killed while in the act of carrying
it to him ; and afterwards, the note falling into the father's hands, he destroyed
it ;—it was held that the father was not liable for the money.

This was *assumpsit* on a promissory note made by the defendant
*March* 1, 1823 for $190 payable to the plaintiff in eight months ;
with a count for money had and received. At the trial before
the Chief Justice the following facts were proved.

On the first of *March* 1823, *Jonathan Horsum*, a son of the
defendant, applied to the plaintiff for a loan of 190 dollars, for
eight months, on the credit of himself and his father the defendant;
to which the plaintiff assented. As the defendant was not present,
but resided several miles distant, and the son's necessity for the
money was pressing, the plaintiff delivered the money to him,
taking his own note for the amount, payable in ten days ; and at
the same time prepared and delivered to him a joint and several
note payable in eight months, to be signed by him and his father,
according to the terms of the loan. This note the son agreed to
take home to be signed by his father and himself ; and to return
it in a few days to the plaintiff, in exchange for the note he had
then given. This agreement was performed so far as to have
the note signed by his father and himself ; but on the eleventh
of *March* 1823, while on his way to the plaintiff's house, with the
note in his pocket book, for the purpose of delivering it to the
plaintiff, he was accidentally killed. The next day the plaintiff
sent to the defendant, requesting him to exchange the notes as
had been agreed ; which the defendant refused to do ; and on the
day following destroyed the note which he had signed, by cutting
out his own name. After this the plaintiff filed his claim under
the first note, signed by the son only, with the commissioners on
the son's estate, it being represented insolvent ; by furnishing
them with a copy of the note ; and at a subsequent meeting, on

producing the original note in proof of his demand, the plaintiff told the commissioners that there was another note, given for the same debt, and signed by the father and son, but which the father retained; and as the son was dead, he did not know that he could do any thing with it. In *August* 1824, the plaintiff received a dividend of $73,73 out of the son's estate.

Upon these facts the defendant consented to a default; which was to be taken off, and a nonsuit entered, if, in the opinion of the court, the action was not maintainable.

*J. Shepley*, for the defendant, argued that the second note was not intended to take effect till it should be exchanged for the first; and this had never happened. It was therefore without consideration. Had the son been sued upon the first note, the existing facts would not have furnished any bar to the action, because nothing had been offered, much less accepted, in payment. As therefore the second note had never been delivered to the plaintiff, but the whole contract was arrested, while yet *in fieri*, by the death of the son, the defendant was not bound.

Nor can the action be maintained on the ground that the delivery of the second note to the son was a delivery to him as agent for the plaintiff; for one party cannot be the agent of another, to carry into effect any agreement. *Paley on Agency p. 2. Wright v. Dannah 2 Campb.* 203. And as to the money count, no liability attaches itself to the defendant, because no money came to his hands; it was borrowed by the son for his own use.

*Hayes* and *Cogswell* for the plaintiff. The plaintiff advanced the money upon the joint credit of the defendant and his son; the latter of whom was expressly constituted his agent, so far as this defendant was concerned, to receive a note with the defendant's signature. As soon as the defendant signed the note, and placed it in the hands of this agent, and beyond his own control, the contract, as between him and the plaintiff, was complete. The note was no longer the property of the defendant; and no one had authority to withhold it from the plaintiff. Nor had the defendant a right to require the delivery up of the first note; since that did not belong to him, but to the son's administrator.

The substance of the contract was the loan of money upon the security of both parties. This loan formed the consideration as well of the second note, as of the first. And it was a claim for this money which was filed with the commissioners ; and which, upon the facts proved, may be considered as allowed upon the second note, since the plaintiff had a right to claim it of either party. The signature of the defendant to the note was, to all intents, a ratification of the terms on which the loan was obtained; and rendered him liable as a joint borrower, whether the note ever reached the plaintiff or not.

The opinion of the court was delivered at the succeeding term in Cumberland, by

MELLEN C. J. Upon the facts before us the present action cannot be maintained, unless *Jonathan Horsum,* as the son of the defendant, can be legally considered as the agent of the plaintiff, in undertaking to procure the note declared on, to be signed by him and the defendant, and returned to the plaintiff and exchanged for the note given by the son alone at the time he received the money. It is true that the plaintiff principally relied on the expected liability of the defendant, and the joint note which the son engaged to procure; but still the note signed by the son only, was to be considered as the plaintiff's security until the joint note should be substituted in its place, and that was never done. The plaintiff has unquestionably been disappointed in his expectations, and deprived of the security intended for him, by an act on the part of the defendant which morality can never sanction; but still we do not perceive how the deceased son can be considered as the plaintiff's agent in the above transaction; he was employed in accomplishing an object for his own benefit, that is in procuring a note to be signed by his father and himself payable in eight months, to be substituted for his own note payable in ten days ; and he was killed before the object was accomplished. By the terms of the agreement, the joint note was not be considered as the plaintiff's property, until delivered to him in exchange for the note signed by the son only. We are therefore of opinion

that the action cannot be maintained upon the count on the joint note. Nor can the general count be considered as in any manner proved by the evidence in the case; because it does not appear, nor is it pretended that any part of the money loaned by the plaintiff ever came to the hands or use of the defendant. Accordingly the default must be stricken off, and a nonsuit entered, pursuant to the agreement of the parties.